LEVI LUBARSKY & FEIGENBAUM LLP
1185 Avenue of the Americas, 17th Floor
New York, New York 10036
(212) 308-6100
Howard B. Levi, Esq.
Attorneys for FLHI Liquidation Trust

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | Case No. 08-11363 (RDD) |
| OLD DELAWARE JEWELS INC., et al., | : | Chapter 11 |
| Debtors. | : | |

-------------------------------------------------------------- x

| | | |
|---|---|---|
| FLHI LIQUIDATION TRUST, | : | Adv. Proc. No. |
| Plaintiff, | : | |
| -against- | : | |
| CHRISTIE'S INC., R. ESMERIAN, INC. and RALPH ESMERIAN, | : | |
| | : | |
| Defendants. | | |

-------------------------------------------------------------- x

## COMPLAINT

Plaintiff FLHI Liquidation Trust (the "Trust"), for its Complaint against Christie's Inc. ("Christie's"), R. Esmerian, Inc. ("REI") and Ralph Esmerian ("Esmerian"), respectfully alleges as follows:

## NATURE OF THE ACTION

1.  This is an adversary proceeding brought pursuant to sections 105, 544, 547, 548, 549 and 550 of title 11 of the United States Code (the "Bankruptcy Code") and rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") arising

from the transfer of inventory received by defendants from the debtors in the above-captioned cases, Calypso Mines LLC ("Calypso"), Tango LLC ("Tango"), Endymion, LLC ("Endymion"), Foxtrot LLC ("Foxtrot"), Old Delaware Jewels Inc. f/k/a Fred Leighton Holding, Inc. ("FL"), Old New York Jewels LLC f/k/a Fred Leighton LLC ("FL New York"), Phoenix Nevada 1, LLC ("FL Nevada") and Old Hills Jewels LLC f/k/a Fred Leighton BH LLC ("FL California") (collectively, the "Debtors").

    2.  Defendants have each played a role, as described below, in the transfer of 19 items of property of the Debtors, which are listed and described specifically in Exhibit A to this Amended Complaint. In addition, defendant Christie's has failed to transfer funds from the sale of another piece of the Debtors' property into escrow as required pursuant to an Order of this Court.

    3.  Plaintiff seeks a judgment (i) avoiding the transfers of the property of the Debtors that are the subject of this action; (ii) directing the recovery of the property of the Debtors that was transferred or the value of such property; (iii) directing Defendants to turn over, deliver and transfer to Plaintiff (a) the property of the Debtors described in this complaint that remains in their possession and control, or (b) the proceeds of any sale, consignment or other transfer of any such property of the Debtors, as well as the difference between the fair market value of any such property that was sold and the actual sale prices of such property, to the full extent allowable by law; and (iv) awarding Plaintiff monetary relief, as appropriate.

## BACKGROUND

    4.  On April 15, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

Court").

5. Pursuant to the Bankruptcy Court's order entered on April 18, 2008, the Debtors' cases were consolidated for procedural and administrative purposes only pursuant to Bankruptcy Rule 1015(b).

6. Shortly after the Petition Date, on April 30, 2008, the Bankruptcy Court issued the Interim Order Authorizing Use of Cash Collateral that was subsequently continued and supplemented by other interim cash collateral orders entered by the Court (collectively, the "Cash Collateral Order"). In addition, on April 30, 2008, the Court issued the Interim Order Authorizing (a) Maintenance of Pre-Petition Bank Accounts, (b) Use of Cash Management System, (c) Use of Business Forms, and Granting Related Relief, which was also subsequently continued and supplemented by additional cash management orders entered by the Court (collectively, the "Cash Management Order").

7. In substance and in part, the Cash Collateral Order and Cash Management Order, among other things, (a) imposed requirements on the deposit and maintenance of each Debtors' Cash Collateral (as defined therein); (b) circumscribed the authority of the Debtors to use Cash Collateral; and (c) restricted the transfer of Cash Collateral of the Debtors to any non-Debtor.

8. On October 30, 2009, the Debtors and Merrill Lynch Mortgage Capital Inc. filed with the Court the parties' First Amended Joint and Consolidated Plan of Reorganization and Liquidation (the "Amended Plan").

9. On November 9, 2009, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Order under 11 U.S.C. § 1129(a) and (b) and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming First Amended Joint and Consolidated Plan of

Reorganization Under Chapter 11 of the Bankruptcy Code (the "Confirmation Order").

10. The Effective Date of the Amended Plan occurred on November 10, 2009.

11. The Trust is the Liquidation Trust established pursuant to Section 7.10 of the Amended Plan.

12. Pursuant to the Confirmation Order, all Causes of Action defined in the Amended Plan as

> any and all actions, proceedings, causes of action, suits, demands, rights to legal remedies, rights to equitable remedies, rights to payment and Claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity or otherwise, of the Debtors or their Estates, existing as of the Effective Date, unless otherwise waived or released by the Debtors or the Plan Administrator, including, without limitation, any of the foregoing arising under sections 542, 543, 544, 547 through 551, and 553 of the Bankruptcy Code

were transferred to the Trust. Confirmation Order ¶ 33.

13. Pursuant to the Confirmation Order, "all Claims against the Debtors asserted or that may be asserted by Esmerian or REI shall be subordinated pursuant to section 510(c) of the Bankruptcy Code to all Allowed General Unsecured Claims, and neither Esmerian nor REI shall receive or retain any property or interest in property on account of such Claims." Confirmation Order ¶ 43.

## PARTIES

14. Plaintiff Trust is a New York trust, with a principal place of business at 12 Upper Mountain Avenue, Montclair, New Jersey. As set forth above, pursuant to the Plan, all claims and causes of action of the Debtors are vested in the Trust.

15. Upon information and belief, defendant Christie's is a New York

4

corporation with its principal place of business at 20 Rockefeller Plaza, New York, New York.

16. Upon information and belief, defendant Esmerian resides at 1001 Park Avenue, New York, New York.

17. Upon information and belief, defendant REI is a New York corporation with its principal place of business at 610 Fifth Avenue, New York, New York. Upon information and belief, Esmerian is the president and majority shareholder of REI, and at all relevant times stated herein, exercised complete dominion and control over REI.

## JURISDICTION AND VENUE

18. This adversary proceeding arises in and relates to the Bankruptcy Cases filed by each of the Debtors on the Petition Date.

19. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

20. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).

21. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a) because this proceeding arises in and is related to the Bankruptcy Cases pending in this District.

## FACTS

### Relationship between the Debtors and the Esmerian Defendants

22. The Debtors are a collection of related entities that were owned and controlled by Esmerian and REI (together, the "Esmerian Defendants"). The principal assets held by each of the Debtors were high-end jewelry items and jeweled objects.

23. More specifically, Esmerian was the Chairman and owner of 100% of the stock of FL, and indirectly, 100% of the membership interests in FL's subsidiaries, FL New

5

York, FL California and FL Nevada. In addition, Esmerian owned 100% of the membership interests in Endymion and Foxtrot, and 99% of the membership interests in Calypso.

24.    REI owned 100% of the membership interest in Tango.

The Esmerian Defendants' Involvement in Debtors' Pre-Petition Financing

25.    In 2005 and 2006, Merrill Lynch Mortgage Capital Inc. ("Merrill Lynch") extended two term loans and a working capital revolving loan facility to certain of the Debtors totaling approximately $177 million (collectively, the "Special Collection and Acquisition Loans").

26.    The first term loan was made to Calypso (the "Special Collection Loan") and closed on November 4, 2005. In connection with the Special Collection Loan, on or about November 4, 2005, Esmerian contributed 101 items of high-end jewelry items to Calypso. On or about January 9, 2006, Esmerian contributed an additional 6 items of jewelry to Calypso. These 107 items of jewelry make up what is also known as the "Special Collection."

27.    As collateral for the Special Collection Loan, Merrill Lynch received a perfected first priority security interest in all of the current and future assets of Calypso, including the Special Collection.

28.    As additional collateral for the Special Collection Loan, on or about November 4, 2005, Esmerian, on behalf of REI, also granted a negative pledge in favor of Merrill Lynch of approximately $30 million of jewelry (the "Negative Pledge Jewelry").

29.    On January 5, 2006, Esmerian, on behalf of REI, contributed approximately $10 million of the Negative Pledge Jewelry to Tango, and such jewelry became subject to a negative pledge by Tango in favor of Merrill Lynch.

30.    Subsequently, Merrill Lynch provided (a) a second term loan to FL for the

purpose of acquiring the assets of the Fred Leighton retail jewelry business, and (b) a revolving line of credit for working capital purposes (collectively, the "Acquisition Loan"). The Acquisition Loan closed on March 29, 2006.

31. As collateral for the Acquisition Loan, Merrill Lynch received a perfected first priority security interest in all of the assets of FL, FL New York and FL Nevada, including all current and future inventory of the Fred Leighton retail stores.

32. In connection with the Acquisition Loan, Esmerian, through REI, contributed the remaining $20 million of Negative Pledge Jewelry to Tango (in addition to the $10 million of Negative Pledge Jewelry that was previously contributed to Tango in January 2006). Esmerian, through REI, also contributed approximately $10 million of additional jewelry. Thus, in March 2006, Tango owned approximately $40 million of jewelry. As collateral for the Acquisition Loan, Merrill Lynch received a perfected first priority security interest in all of the current and future assets of Tango.

33. Also in connection with the Acquisition Loan, and pursuant to a March 22, 2006 resolution, Esmerian contributed approximately $28 million of jewelry to Endymion. As collateral for the Acquisition Loan, Merrill Lynch received a perfected first priority security interest in all of the current and future assets of Endymion.

34. On the closing date of the Acquisition Loan, the Acquisition Loan and the Special Collection Loan were cross-collateralized. Accordingly, all of the collateral securing the Acquisition Loan also secures the Special Collection Loan, and all of the collateral securing the Special Collection Loan also secures the Acquisition Loan.

35. On or about April 6, 2007, Esmerian contributed approximately $33 million of jewelry to Foxtrot. In consideration for Merrill Lynch's waiver of certain defaults and

breaches under the loan documentation for the Special Collection and Acquisition Loans and as additional collateral for the loans, Merrill Lynch received a perfected first priority security interest in all of the current and future assets of Foxtrot.

36. The items of jewelry owned by Tango and Endymion were listed as part of the borrowing base certificates required to be delivered under the documents that were executed as part of the Acquisition Loan. The last borrowing base certificate was delivered to Merrill Lynch on October 2, 2007, was dated September 12, 2007 and was current as of August 31, 2007.

37. Esmerian signed the documentation pertaining to the Special Collection and Acquisition Loans, and all amendments and side letters relating thereto, on behalf of the Debtors.

Pre-Petition Transfers by the Debtors

38. Upon information and belief, prior to the Petition Date, the Debtors listed as transferors in the schedule annexed hereto as Exhibit A made the pre-petition transfers of jewelry to or for the benefit of Esmerian and/or REI.

39. Upon information and belief, defendant Christie's was a transferee of each of the items of jewelry described in the schedule annexed hereto as Exhibit A, and sold such jewelry for the benefit of REI. Upon information and belief, some or all of the proceeds of such sales were paid to and/or retained by Christie's.

40. Esmerian knew that each of the items of jewelry that are described in Exhibit A to the Complaint were property of the Debtors. Esmerian also knew that each of the Debtors had pledged such items of collateral to Merrill Lynch and that the Debtors, which he controlled, reflected such items as collateral on borrowing base reports submitted to Merrill

8

Lynch.

41. As alleged in Christie's verified complaint in its state court action against the Esmerian Defendants (<u>Christie's Inc. v. R. Esmerian Inc. and Ralph Esmerian</u>, Index No. 600070/2008), the debt of the Esmerian Defendants to Christie's under the parties' loan agreement matured on December 31, 2005 in an amount exceeding $9.4 million, and throughout 2006 and 2007 Esmerian promised to deliver additional items of collateral to Christie's.

42. When Esmerian and REI caused the Debtors to transfer the items of the Debtors' property described in Exhibit A, Esmerian and REI acted with the intent to hinder, delay and defraud Merrill Lynch and unsecured creditors generally.

43. By reason of Esmerian's ownership and control of the Debtors at the time of these transfers, Esmerian's fraudulent intent is attributable to the Debtors.

<u>Post-Petition Transfers by Debtors for the Benefit of Defendants</u>

44. Upon information and belief, on or after the Petition Date, the Debtors listed as transferors in the schedule annexed hereto as Exhibit A made the pre-petition transfers of jewelry to or for the benefit of Esmerian and/or REI.

45. Upon information and belief, defendant Christie's was a transferee of each of the items of jewelry described in the schedule annexed hereto as Exhibit A, and sold such jewelry for the benefit of REI. Upon information and belief, some or all of the proceeds of such sales were paid to and/or retained by Christie's.

<u>Christie's Violation of the Calypso No. 56 Stipulation and Order</u>

46. On October 13, 2009, the Court approved a Stipulation and Order Regarding Calypso No. 56 Between Christie's Inc., Merrill Lynch Mortgage Capital Inc. and the Debtors [Docket No. 668] (the "Calypso No. 56 Stipulation and Order").

47. The subject of the Calypso No. 56 Stipulation and Order was a certain "twilight landscape comb by Lalique, circa 1900," also known as Calypso No. 56, owned by the Debtors and in which both Christie's and Merrill Lynch claimed an interest.

48. The Calypso No. 56 Stipulation and Order provided, among other things, that Calypso No. 56 would be sold by Christie's at its October 21, 2009 auction, and that upon payment by the purchaser, the Net Proceeds of the sale (as defined in the Calypso No. 56 Stipulation and Order) would be remitted by Christie's to the Debtors within two business days, to be held in escrow until further order of the Court.

49. Upon information and belief, Calypso No. 56 was sold at Christie's October 21, 2009 auction.

50. Upon information and belief, the purchaser of Calypso No. 56 has remitted the full purchase price to Christie's, and did so more than two business days prior to the date of this Complaint.

51. As of the date of this Complaint, Christie's has not delivered the Net Proceeds of the sale to the Debtors or to the Trust.

## FIRST CAUSE OF ACTION
### Declaratory Relief

52. At all times relevant to this action, the Debtors had all legal title in and to the items of jewelry listed on Exhibit A hereto.

53. Accordingly, Plaintiff seeks judgment declaring that the property listed on Exhibit A constitutes property of the Debtors' estates.

## SECOND CAUSE OF ACTION
### Avoidance of Preferential Transfers Pursuant to 11 U.S.C. § 547

54. Plaintiff repeats and realleges paragraphs 1 through 53 as if fully set forth

herein.

55. Each of the transfers described in Exhibit A occurring between April 15, 2007 and April 15, 2008 (together, "One-Year Insider Transfers") was made to or for the benefit of Esmerian and/or REI.

56. Each of the One-Year Insider Transfers was made for or on account of an antecedent debt allegedly owed by the transferor before such transfer was made.

57. Each of the One-Year Insider Transfers was made while the transferor was insolvent.

58. Each of the One-Year Insider Transfers was made to an insider of the transferor, i.e., Esmerian and/or REI, on or within one year before the Petition Date.

59. Each of the One-Year Insider Transfers enabled the Esmerian Defendants to receive more from the Debtors and their estates than they would have received if the Bankruptcy Cases had proceeded under Chapter 7 of the Bankruptcy Code, the transfers had not been made and the Esmerian Defendants had been paid to the extent permitted by the Bankruptcy Code.

60. By virtue of the foregoing, pursuant to sections 547 and 550 of the Bankruptcy Code, each of the One-Year Insider Transfers should be avoided, recovered and preserved for the benefit of the Debtors' estates.

THIRD CAUSE OF ACTION
Avoidance and Recovery of Intentionally Fraudulent
Transfers Under 11 U.S.C. §§ 544(b) and 550

61. Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

62. Upon information and belief, the transfers described in Exhibit A were

11

made on account of a debt allegedly owed by a Debtor or allegedly as a return of the Esmerian Defendants' capital investment in a Debtor.

63. Upon information and belief, the transfers described in Exhibit A were transfers of an interest of one or more of the Debtors in property.

64. Upon information and belief, the transfers described in Exhibit A were made with the actual intent to delay, hinder and defraud any entity to which the Debtors were or became indebted, on or after the date that such transfers were made.

65. Upon information and belief, the Debtors received no consideration for such transfers.

66. Upon information and belief, the transfers described in Exhibit A were made by the Debtors solely with the intent to benefit the Esmerian Defendants.

67. Defendants were the initial and/or immediate or mediate transferees of the transfers described in Exhibit A.

68. At all times relevant hereto, there were actual creditors of the applicable Debtors holding unsecured claims allowable against the Debtors' estates within the meaning of Sections 502(d) and 544(b) of the Bankruptcy Code. These creditors have the right to void the transfers described in Exhibit A under applicable law, including, but not limited to, the laws of the State of New York.

69. By virtue of the foregoing, pursuant to sections 544(b) and 550 of the Bankruptcy Code, the transfers described in Exhibit A should be avoided, recovered, and preserved for the benefit of the Debtors' estates.

## FOURTH CAUSE OF ACTION
Avoidance and Recovery of Constructively Fraudulent
Transfers Under 11 U.S.C. §§ 544(b) and 550

70. Plaintiff repeats and realleges paragraphs 1 through 68 as if fully set forth herein.

71. Upon information and belief, the transfers described in Exhibit A were made on account of a debt allegedly owed by a Debtor or allegedly as a return of the Esmerian Defendants' capital investment in a Debtor.

72. Upon information and belief, the transfers described in Exhibit A were transfers of an interest of one or more of the Debtors in property.

73. The Debtors made the transfers described in Exhibit A when they: (i) were insolvent or were rendered insolvent, (ii) were engaged or were about to engage in business or a transaction, for which any property remaining was an unreasonably small capital, and/or (iii) intended to incur, or believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

74. Upon information and belief, the Debtors received no consideration for such transfers.

75. Defendants were the initial and/or immediate or mediate transferees of the transfers described in Exhibit A.

76. At all times relevant hereto, there were actual creditors of the applicable Debtors holding unsecured claims allowable against the Debtors' estates within the meaning of Sections 502(d) and 544(b) of the Bankruptcy Code. These creditors have the right to void the transfers described in Exhibit A under applicable law, including, but not limited to, the laws of the State of New York.

13

77. By virtue of the foregoing, pursuant to sections 544(b) and 550 of the Bankruptcy Code, the transfers described in Exhibit A should be avoided, recovered, and preserved for the benefit of the Debtors' estates.

FIFTH CAUSE OF ACTION
(Avoidance and Recovery of Intentionally Fraudulent
Transfers Under 11 U.S.C. §§ 548 and 550)

78. Plaintiff repeats and realleges paragraphs 1 through 75 as if fully set forth herein.

79. Upon information and belief, the transfers described in Exhibit A were made on account of a debt allegedly owed by a Debtor or allegedly as a return of defendants' capital investment in a Debtor. At least $3,212,483.00 of the transfers described in Exhibit A were made on or within two years of the Petition Date.

80. Upon information and belief, the transfers described in Exhibit A were transfers of an interest of one or more of the Debtors in property.

81. Upon information and belief, the transfers described in Exhibit A were made with the actual intent to hinder, delay and defraud any entity to which the Debtors were or became indebted, on or after the date that such transfers were made. Upon information and belief, the Debtors received no consideration for such transfers.

82. Defendants were the initial and/or immediate or mediate transferees of the transfers described in Exhibit A.

83. By virtue of the foregoing, pursuant to sections 548 and 550 of the Bankruptcy Code, at least $3,212,483.00 of the One-Year Insider Transfers should be avoided, recovered, and preserved for the benefit of the Debtors' estates.

14

## SIXTH CAUSE OF ACTION
Avoidance and Recovery of Constructively Fraudulent
Transfers Under 11 U.S.C. §§ 548 and 550

84. Plaintiff repeats and realleges paragraphs 1 through 81 as if fully set forth herein.

85. Upon information and belief, the transfers described in Exhibit A were made on account of a debt allegedly owed by a Debtor or allegedly as a return of defendants' capital investment in a Debtor. At least $3,212,483.00 of the transfers described in Exhibit A were made on or within two years of the Petition Date.

86. Upon information and belief, the transfers described in Exhibit A were transfers of an interest of one or more of the Debtors in property.

87. Upon information and belief, the Debtors received less than a reasonably equivalent value in exchange for the transfers described in Exhibit A.

88. Upon information and belief, the Debtors made the transfers described in Exhibit A when they: (i) were insolvent on the date that such transfers were made, or became insolvent as a result of such transfers; (ii) were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (iii) intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured; and/or (iv) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

89. Defendants were the initial and/or immediate or mediate transferees of the transfers described in Exhibit A.

90. By virtue of the foregoing, pursuant to sections 548 and 550 of the

15

Bankruptcy Code, at least $3,212,483.00 of the transfers described in Exhibit A should be avoided, recovered, and preserved for the benefit of the Debtors' estates.

SEVENTH CAUSE OF ACTION
Avoidance and Recovery of Pospetition
Transfers Under 11 U.S.C. §§ 549 and 550

91. Plaintiff repeats and realleges paragraphs 1 through 87 as if fully set forth herein.

92. Upon information and belief, the transfers described in Exhibit A occurred after the commencement of the Bankruptcy Cases.

93. Upon information and belief, the transfers described in Exhibit A were not authorized under the Bankruptcy Code or by the Court, and were made in contravention of the Cash Collateral Order and the Cash Management Order.

94. Defendants were the initial and/or immediate or mediate transferees of the transfers described in Exhibit A.

95. By virtue of the foregoing, pursuant to sections 549(a) and 550 of the Bankruptcy Code, the transfers described in Exhibit A above should be avoided, recovered, and preserved for the benefit of the Debtors' estates.

EIGHTH CAUSE OF ACTION
Breach of Contract Against Christie's

96. Plaintiff repeats and realleges paragraphs 1 through 92 as if fully set forth herein.

97. Christie's breached the Calypso No. 56 Stipulation and Order by failing to pay the net proceeds of the sale of Calypso No. 56 to the Debtors.

98. The Trust has been damaged by Christie's breach of the Calypso No. 56 Stipulation and Order in an amount to be determined at the trial of this adversary proceeding.

16

NINTH CAUSE OF ACTION
Money Had and Received Against All Defendants

99. Plaintiff repeats and realleges paragraphs 1 through 95 of this Amended Complaint as if fully set forth herein.

100. Upon information and belief, Christie's, Esmerian and REI are no longer in possession of the items of jewelry that are listed on Exhibit A and that are property of the Debtors worth not less than $3,212,483.00.

101. Defendants have no legal or equitable right, title or interest in the proceeds of the sale of the items of jewelry that are listed on Exhibit A. Debtors were the rightful owners of the items of jewelry that are listed on Exhibit A, when Defendants purported to sell the items.

102. Defendants owe Plaintiff all amounts collected from the purported sale of the items of jewelry that are listed on Exhibit A, for money that they had and received from the purchaser(s) of these items. Additionally, Defendants owe Plaintiff damages for the difference between the fair market value of the items of jewelry that are listed on Exhibit A and the actual sale prices.

103. In equity and good conscience, Defendants should be required to transfer to Plaintiff the proceeds from the sale of the items of jewelry that are listed on Exhibit A, plus applicable interest and costs or, if the proceeds have been disbursed, to transfer an amount equal to the missing proceeds to Plaintiff, as well as the difference between the fair market value of the items of jewelry that are listed on Exhibit A that were sold and the actual sale prices.

WHEREFORE, Plaintiff demands judgment against the Defendants:

(a) on the First Cause of Action, declaring that the property listed on Exhibit A constitutes property of the Debtors' estates;

(b) on the Second Cause of Action, a judgment avoiding the One-Year Insider

Transfers, and directing Defendants to transfer to Plaintiff the property transferred to them or the value thereof, in an amount not less than $3,212,483.00;

    (c)  on the Third Cause of Action, a judgment avoiding the transfers described in Exhibit A, and directing Defendants to transfer to Plaintiff the property transferred to them or the value thereof, in an amount not less than $3,212,483.00;

    (d)  on the Fourth Cause of Action, a judgment avoiding the transfers described in Exhibit A, and directing Defendants to transfer to Plaintiff the property transferred to them or the value thereof, in an amount not less than $3,212,483.00;

    (e)  on the Fifth Cause of Action, a judgment avoiding the One-Year Insider Transfers, and directing Defendants to transfer to Plaintiff the property transferred to them or the value thereof, in an amount not less than $3,212,483.00;

    (f)  on the Sixth Cause of Action, a judgment avoiding the One-Year Insider Transfers, and directing Defendants to transfer to Plaintiff the property transferred to them or the value thereof, in an amount not less than $3,212,483.00;

    (g)  on the Seventh Cause of Action, a judgment avoiding the transfers described in Exhibit A, and directing Defendants to transfer to Plaintiff the property transferred to them or the value thereof, in an amount not less than $3,212,483.00;

    (h)  on the Eighth Cause of Action, a judgment against Christie's in an amount to be determined at the trial of this adversary proceeding;

    (i)  on the Ninth Cause of Action, a judgment against Defendants directing them to transfer to Plaintiff the proceeds from the sale of the items of jewelry listed on Exhibit A, plus applicable interest and costs or, if the proceeds have been disbursed, to transfer an amount equal to the missing proceeds to Plaintiff, as well as the difference between the fair

18

market value of the items of jewelry listed on Exhibit A that were sold and the actual sale prices; and

    (j)  for such other and further relief, including interest, costs, disbursements and attorneys' fees, as the Court may deem just and proper.

Dated: New York, New York
   April 15, 2010

              LEVI LUBARSKY & FEIGENBAUM LLP

              By: _____
                Howard B. Levi
              1185 Avenue of the Americas, 17th Floor
              New York, New York  10036
              (212) 308-6100
              Attorneys for Plaintiff FLHI Liquidation Trust